**Henry H. PRITIKIN, on his own behalf and on behalf of all others similarly situated, Plaintiff,**

. v.

**Wayne THURMAN, Chief of Police of the City of North Miami, and Martin D. Kahn, City Attorney for the City of North Miami, Florida, Defendants.**

**No. 70–148–Civ–TC.**

United States District Court,
S. D. Florida.

April 22, 1970.

Michael S. Hacker, Miami, Fla., for plaintiff.

Kahn & Clein, Miami, Fla., for defendants.

## SUMMARY FINAL JUDGMENT

CABOT, District Judge.

This cause came before the court upon plaintiff's motion for summary judgment. The court has considered the motion, reviewed the file, considered the advices of counsel, and is otherwise duly advised in the matter.

This is an action brought by the plaintiff, Henry H. Pritikin, seeking a declaration, 28 U.S.C. §§ 2201, 2202, that Section 15–8 of the Code of the City of North Miami is unconstitutional in that it violates plaintiff's rights to due process of law and freedom of speech. Plain-

tiff seeks issuance of a preliminary and permanent injunction, 42 U.S.C. § 1983, restraining the defendants, the Chief of Police of North Miami, Wayne Thurman, and the City Attorney, Martin Kahn, from enforcing the ordinance. Jurisdiction is conferred on this court pursuant to 28 U.S.C. §§ 1331, 1343(3).

The plaintiff, a 74 year old resident of North Miami, was arrested on December 6, 1969, by North Miami police and charged with a violation of Section 15–8 of the Code of the City of North Miami, as amended, the city disorderly conduct ordinance. Prosecution of that charge has been continued pending final disposition of this case.

Section 15–8 states:

Whosoever shall willfully disturb the peace of others by violent, tumultuous or offensive conduct or carriage or by loud or unusual noise, or by profane, obscene or offensive language, calculated to provoke a breach of the peace, or by assaulting, striking or fighting another, or shall permit any such conduct in or upon any house or premises owned or possessed by him or under his management or control, so that others in the vicinity are disturbed thereby, shall upon conviction, be punished as provided for in Section 1–8 of this Code. (Ord. No. 8, 2–12–26)

This ordinance seeks to prohibit, as disorderly, and punish, as criminal, certain types of conduct and speech. The plaintiff asserts that the ordinance is unconstitutional in that it fails to meet the requisites of certainty and specificity which are required of criminal ordinances under established principles of due process of law, and further that such a defect results in chilling plaintiff's exercise of his First Amendment rights. The plaintiff does not take issue with the second half of the statute, but rather centers his attack on the language contained in the statute as recited in his summons, to-wit: Wilfully disturbing the peace of others by violent, tumultuous or offensive conduct or carriage and by loud, profane, obscene, or offensive language, calculated to provoke a breach of the peace. The summons, it should be noted, speaks solely in the terms of the ordinance and nowhere indicates the specific nature of the offense involved.

In considering this ordinance it should be kept in mind that "the Constitution does not bar the enactment of laws regulating conduct, even though connected with speech, press, assembly, and petition, if such laws specifically bar only the conduct deemed obnoxious and are carefully and narrowly aimed at that forbidden conduct." Gregory v. City of Chicago, 1969, 394 U.S. 111, 118, 89 S.Ct. 946, 950, 22 L.Ed.2d 134. The standard to be observed in determining whether a legislative body has "carefully and narrowly" drawn an ordinance so as to provide specificity and, in the circumstances of this case, safeguard First Amendment freedoms has been stated as follows:

That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. Connally v. General Const. Co., 1926, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322.

In applying this standard to the ordinance the court is mindful of the fact that while the Florida courts have not considered this ordinance, the construction they may have placed on ordinances or statutes similar to the one at bar are binding on this court just as if those words had been written into the ordinance itself. Terminiello v. City of Chicago, 1949, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131. Thus, in Wright v. City of Montgomery, 5 Cir. 1969, 406 F.2d 867, the court sustained the constitution-

ality of an otherwise vague and broadly sweeping disorderly conduct ordinance, virtually identical to the North Miami ordinance, where similar ordinances had been construed and limited by the Alabama state courts to "violent and menacing conduct or conduct which tends to provoke menacing and violent conduct." Even though the court found the ordinance sufficiently and narrowly limited and hence constitutional, the speech portion of the ordinance, unlike the situation here, was not directly in issue, nor had that portion undergone the narrowing process imposed upon the prohibition on conduct contained in the ordinance.

The North Miami ordinance attempts, unlike the City of Miami's disorderly conduct ordinance recently declared unconstitutional in Livingston v. Garmire, S.D.Fla., 308 F.Supp. 472, and unlike the situations presented in Terminiello v. City of Chicago, *supra*, and Edwards v. South Carolina, 1963, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697, discussed below, to specifically indicate and limit the types of speech and conduct proscribed. The attempt, however, is constitutionally insufficient.

■ The ordinance seeks to ensure the peace of the community by prohibiting "offensive conduct," "offensive carriage," "loud noise," "unusual noise," "profane language," or "offensive language," calculated to provoke a breach of the peace. These terms do not sufficiently describe what is prohibited conduct and what language may not be spoken.

The term "offensive" is subjective, capable of multiple interpretations, and, therefore, while certain conduct, language, or carriage may be offensive to some, thus disturbing the tranquility of the community, it may not be offensive to others. The constitutional infirmity is that a resident of the community, not made sufficiently aware of what he may or may not do, is subject to criminal prosecution simply because some of his neighbors have no self-control and cannot refrain from violent reaction to conduct, language, or carriage they deem offensive. *See*, Ashton v. Kentucky, 1966, 384 U.S. 195, 86 S.Ct. 1407, 16 L. Ed.2d 469, citing Chafee, Free Speech in the United States, 151 (1954).

In a like manner the phrases "unusual noise" or "profane language" are insufficiently narrow and further may operate to infringe upon the exercise of protected rights. For example, the tones produced by the seventh grade novice trumpet player are undisputedly unusual noises. Under this ordinance the trumpeter would be subject to criminal prosecution as a disorderly person.

Webster defines "profane" as showing disregard or contempt for sacred things. The statement, today repeated by many, that "God is dead," shows disrespect for what is universally regarded as a sacred institution, i. e., religion. Yet, that utterance, violative of the ordinance, is clearly within the protection of the First Amendment. Legislative infringement into this protected area is the direct product of the vague and sweeping language contained in the ordinance.

Removing these objectional terms, the court is confronted with an ordinance which prohibits language or conduct which disturbs or is calculated to disturb the peace. Without sufficient narrowing construction of this language by the state courts, as was done in *Wright, supra*, the ordinance is unconstitutional.

The Florida state courts have given constitutional approval to disorderly conduct and breach of the peace ordinances which prohibit making or causing to be made loud, unusual, and offensive noises and disturbances, Matteson v. City of Eustis, 1939, 140 Fla. 591, 190 So. 558, and which prohibit profane language, and loud and disturbing and obnoxious noises. City of St. Petersburg v. Calbeck, Fla.App.2d Dist.1959, 114 So.2d 316, cited and approved by the Florida Supreme Court in Headley v. Selkowitz, Fla.1965, 171 So.2d 368. *See*, also, City of St. Petersburg v. Calbeck, Fla.App.2d Dist.1960, 121 So.2d 814, and Nixon v. State, Fla.App.3d Dist.1965, 178 So.2d 620. Those decisions, however, do not

sufficiently narrow the remaining language of this ordinance so as to sustain its constitutionality.

In *Calbeck, supra,* 114 So.2d at 318, a breach of the peace was defined to mean a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace. This standard, unlike that imposed upon the ordinance in *Wright,* does not sufficiently narrow the proscribed conduct so as to give reasonable notice of a violation to those charged under the ordinance. In fact, as pointed out in Livingston v. Garmire, *supra,* the Supreme Court, both in Terminiello v. City of Chicago, *supra,* and later in Edwards v. South Carolina, *supra,* rejected as insufficient "narrowing language" virtually identical to that contained in *Calbeck,* later approved by the Florida Supreme Court in *Headley.*

The Supreme Court has on several occasions reversed convictions for breach of the peace violations where the offense was imprecisely defined. *See,* Cox v. Louisiana, 1965, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471, Edwards v. South Carolina, *supra,* and Terminiello v. City of Chicago, *supra.* Those decisions recognized that to make an offense of imprecisely defined conduct which is "calculated to create disturbances of the peace" leaves wide open the standard of responsibility. It involves calculations as to the boiling point of a particular person or a particular group, not an appraisal of the nature of the comments or conduct, per se. Ashton v. Kentucky, *supra.*

The ordinance before this court, neither containing sufficient express standards nor having the benefit of any assigned to it, suffers from the constitutional defect of vagueness, a due process violation.

Two recent district court decisions, Livingston v. Garmire, *supra,* and The Original Fayette County Civic and Welfare League, Inc., v. Wellington, March 11, 1970, 6 Cr.L. 2403, are also persuasive in this matter. In *Livingston* the

court held unconstitutional subsection (a) of Section 38–10, the City of Miami disorderly conduct ordinance, which prohibited improper noise, breach of the peace, or a diversion tending to a breach of the peace. In that case the court found the Supreme Court's decisions in *Terminiello, Edwards,* and *Ashton* controlling. In the *Fayette County* case a three-judge United States District Court for Western Tennessee considered the constitutionality of that state's disorderly conduct statute which prohibited, as is the case here, speech—the use of rude, boisterous offensive, obscene, or blasphemous language and conduct—the making of an improper noise, disturbance, breach of the peace, or diversion. The court held that the statute did not provide the fair warning to the public and certainty of interpretation by courts and juries that is required by due process of law. Additionally, the court stated that the statute swept too broadly in limiting the exercise of the First Amendment right to free speech to language that was not "rude, boisterous, offensive, or blasphemous." That holding is equally appropriate to this case.

Accordingly, the court finds that there are no genuine issues of material fact, and it is ordered and adjudged that:

1. Plaintiff's motion for summary judgment be and the same is hereby granted.

2. Section 15–8 of the Code of the City of North Miami, as amended, insofar as it prohibits disturbing the peace by

"violent, tumultuous, or offensive conduct, or carriage or by loud or unusual noise, or by profane, obscene, or offensive language, calculated to provoke a breach of the peace,"

be and the same is declared unconstitutional.

3. The City of North Miami and the defendants Thurman and Kahn be and they are hereby permanently restrained and enjoined from enforcing the aforementioned unconstitutional portion of Section 15–8 of the City Code.