707 So.2d 742 (1997)
Detective Jerome VERMETTE, Detective James Gaczewski, Corporal George Hill, and Detective Joseph Antinori, Petitioners,
v.
Henry S. LUDWIG, Respondent.
No. 97-00330.
District Court of Appeal of Florida, Second District.
December 10, 1997.
Rehearing Denied February 19, 1998.
*744 Hala A. Sandridge of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, for Petitioners Vermette, Gaczewski and Hill.
Christopher C. Sabella of Hillsborough County Sheriff's Office, Tampa, for Petitioner Antinori.
Henry S. Ludwig, pro se, Tampa, Respondent.
NORTHCUTT, Judge.
Officers of the Hillsborough County Sheriff's Office appeal the denial of their motion for summary judgment in a civil rights action filed against them by Henry Ludwig pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, relative to his arrest for dealing in stolen property. As to the § 1983 claims, the officers grounded their summary judgment motion on an assertion of qualified immunity from suit. They also contended that neither Ludwig's complaint nor the undisputed facts of record supported his claims under §§ 1985 and 1986. The officers advance both of those arguments on appeal. We treat the appeal as a petition for writ of certiorari, and we grant it in part.
We first examine our jurisdiction. The Florida Rules of Appellate Procedure generally do not permit interlocutory appeals of nonfinal orders denying motions for summary judgment. An exception is rule 9.130(a)(3)(C)(viii), which authorizes an appeal of a nonfinal order that determines "that, as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights claim arising under federal law." As can be seen, the rule does not authorize appellate review of the challenged order insofar as it denied summary judgment on Ludwig's §§ 1985 and 1986 claims, because in those regards the ruling did not turn on the issue of qualified immunity. The rule applies here, if at all, only to the extent that the order determined that as a matter of law the officers were not entitled to qualified immunity from the § 1983 claim.
We conclude, however, that even that aspect of the order is not reviewable by interlocutory appeal. The circuit court's order denied the motion for summary judgment without explanation. In their briefs, the officers suggest that the court denied their motion based on Ludwig's assertions of irrelevant fact disputes. Ludwig claims in his brief that the court found that there were disputed issues of material fact. Accepting the parties' representations that the order did not determine that, as a matter of law, the officers were not entitled to qualified immunity, we lack jurisdiction to review the decision under rule 9.130(a)(3)(C)(viii). See Stephens v. Geoghegan, 702 So.2d 517 (Fla. 2d DCA 1997). Cf. Hastings v. Demming, 694 So.2d 718, 720 (Fla.1997) (addressing rule 9.130(a)(1)(C)(vi), which permits interlocutory appeal of orders determining, as a matter of law, that a party is not entitled to workers' compensation immunity; court noted that order must specifically state that the immunity is not available as a matter of law).
Still, we have discretionary jurisdiction to review certain nonfinal orders by certiorari. Fla. R.App. Pro. 9.030(b)(2)(A). To obtain a writ of certiorari the petitioner must establish: (1) a departure from the essential requirements of the law; (2) resulting in material injury for the remainder of the case; (3) that cannot be corrected on postjudgment appeal. Stephens, 702 So.2d at 521; Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 648 (Fla. 2d DCA 1995). Because of the nature and purpose of a claim of immunity from suit, an appeal after final judgment would not be an adequate remedy; a party can not be reimmunized from suit after-the-fact. Stephens, 702 So.2d at 521. Accordingly, as respects the officers' claim of immunity from the § 1983 suit, we find that they have established the material harm, irreparable on appeal after judgment, necessary to invoke our certiorari jurisdiction.
Next, we must decide whether the circuit court's order denying the officers' claim of qualified immunity departed from the essential requirements of law. "[W]hen a public official moves for summary judgment on the ground that he or she enjoys immunity from suit arising under either state or federal law, and the record conclusively demonstrates that the public official is entitled to immunity, *745 it is a departure from the essential requirements of law to deny it." Stephens, 702 So.2d at 525. The dispositive issue, then, is whether the record before the circuit court when it considered the motion for summary judgment conclusively demonstrated the officers' entitlement to immunity. We conclude that it did.
Ludwig's third amended complaint charged that the officers arrested him without probable cause to believe that he had committed a crime, thereby violating his rights to freedom from unlawful arrest and imprisonment. At the time of the hearing on the officers' motion for summary judgment, the record disclosed these undisputed facts: Ludwig owned and operated a pawn shop. One morning in June 1991, Carl Ognibene entered the shop and told Ludwig that he wanted to sell two guns. Ludwig asked for identification, but Ognibene had none. He left the shop, then returned with a driver's license a few moments later. Ognibene told Ludwig that "he thought [the guns] were stolen because a friend of his told him that he stole them out of a car." Ognibene mentioned at least three more times that the weapons might be stolen. At some point, Ludwig telephoned the sheriff's office to ask whether the guns appeared on the department's computerized record of stolen firearms. He was told that no guns with those serial numbers were listed. Ludwig then had Ognibene sign a document which falsely stated that the weapons were his personal property. Ludwig purchased the two guns for $150, a price he knew to be well below their market value.
Throughout the foregoing, Ognibene was working as a confidential informant for the sheriff's department under the direction of the defendant officers. The officers had obtained the weapons from the department's property room, and had given them to Ognibene with instructions that he attempt to sell them to Ludwig while representing that they were stolen. After being fitted with a listening device, Ognibene entered the pawn shop while the officers waited nearby.
The listening device failed. But when Ognibene left the pawn shop he recounted to the officers that he had told Ludwig the guns were stolen. Ognibene reported that Ludwig had advised him to sell the weapons on the street unless he could produce identification, in which case Ludwig would buy them at the pawn shop. The officers directed Ognibene to return to the shop with identification and make another attempt to sell the guns.
After Ognibene went back to the pawn shop one of the officers, Det. Antinori, entered the shop posing as a customer. He remained there for a time, eavesdropping on the conversation between Ludwig and Ognibene. Although Antinori could not hear all that was said, he did overhear Ludwig's telephone call to the sheriff's office.
When Ognibene emerged from the pawn shop the second time, he told the officers that Ludwig had purchased the two guns after Ognibene told him the guns were stolen. The officers entered the shop, and observed the guns on a shelf behind the display counter. They arrested Ludwig on a charge of dealing in stolen property. Eventually, however, the state attorney's office declined to prosecute.
In Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the United States Supreme Court held that "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." It is a two-part analysis. "First, the defendant must demonstrate that he or she performed the acts in question as part of a discretionary governmental function. The burden then shifts to the plaintiff to prove that the defendant's conduct violated clearly established statutory or constitutional rights. See Zeigler v. Jackson, 716 F.2d 847 (11th Cir.1983). If the public official's conduct did not violate a clearly established statutory or constitutional right, the official is immune." Stephens, 702 So.2d at 526.
There is no question here that the officers satisfied the initial burden. Their participation in a reverse sting operation was part of their discretionary governmental functions as sheriff's deputies. Paragraph 12 of Ludwig's *746 third amended complaint alleged that the defendants were duly authorized law enforcement officers and that "in doing the actions alleged here, [they] acted within the course and scope of their employment."
We are left with one critical inquiry, i.e., whether the record on summary judgment precluded Ludwig's ability to succeed on a claim that the officers' conduct violated a clearly established statutory or constitutional right. An arrest without probable cause violates the Fourth Amendment and establishes a cause of action under § 1983. See Walsingham v. Dockery, 671 So.2d 166, 172 (Fla. 1st DCA 1996), rehearing denied (April 24, 1996). On the other hand, the existence of probable cause is an absolute bar to a § 1983 claim. See Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990). For these purposes, the test is whether reasonable public officials in the same circumstances and possessing the same knowledge as the defendants could have believed that probable cause existed. See Lowe v. Aldridge, 958 F.2d 1565, 1570 (11th Cir. 1992).
Actual probable cause is not necessary for an arrest to be objectively reasonable, since it is inevitable that there will be cases where law enforcement officials will reasonably, but mistakenly, conclude that probable cause is present. In such cases, "those officials should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523, 531 (1987)[.]
Walsingham, 671 So.2d at 172.
When exploring this question, we attach no significance to the fact that the state attorney elected not to prosecute Ludwig. A prosecutor's decision whether to go forward with a case is a discretionary one, most often premised on an assessment of whether there is enough evidence to convince a jury that the accused is guilty beyond a reasonable doubt. But even if the state attorney had believed that the officers lacked actual probable cause to arrest Ludwig, that opinion would have no bearing on this case. As Walsingham observed, even if the officers were mistaken in their belief that they had probable cause, they would still be immune if their belief was reasonable under the circumstances.
In any event, the record demonstrates that the officers did, in fact, have probable cause to arrest Ludwig. Prior to making the arrest, the officers had instructed their confidential informant to attempt to sell the guns to Ludwig after telling him that they were stolen. They observed the informant take the firearms into the shop, and eventually emerge without them. The informant reported that he had complied with the officers' instructions, and that Ludwig had purchased the guns after the informant told him that they were stolen. That Ludwig understood that the weapons might be stolen was corroborated when Det. Antinori overheard Ludwig's telephone call to the sheriff's department. When the officers entered the shop, they found the guns on a shelf behind the display counter. We conclude that these circumstances gave the officers probable cause to believe that Ludwig had dealt in stolen property in violation of section 812.022, Florida Statutes (1991).
Ludwig argues here, as he did below, that the officers could not have had probable cause to arrest him because the officers knew that, in fact, the guns were not stolen. But by virtue of section 812.028(1) and (3), Florida Statutes (1991), neither law enforcement's use of a stratagem or deception in making an arrest, nor the fact that property that was not stolen was offered for sale as stolen, constitutes a defense to the charge of dealing in stolen property. Consequently, Ludwig's assertions in these regards were irrelevant to the question whether the officers had probable cause to arrest him.
The record in this case conclusively established that the defendant officers had probable cause to arrest Ludwig. Therefore, they were entitled to summary judgment in their favor on their claim to qualified immunity from Ludwig's suit under 42 U.S.C. § 1983. The circuit court's order denying their motion was a departure from the essential requirements of law. Stephens, 702 So.2d at 526. We grant the writ of certiorari, and direct the circuit court to enter summary *747 judgment in favor of the defendants on Ludwig's claims under 42 U.S.C. § 1983.
The officers also make a persuasive argument that they were entitled to summary judgment on Ludwig's claims under 42 U.S.C. §§ 1985 and 1986.[1] But we lack jurisdiction to review that aspect of the circuit court's order. Because the officers' immunity from suit did not extend to these claims, the denial of their motion for summary judgment on the claims did not cause them harm that is irremediable on appeal from final judgment. Therefore, we must dismiss this portion of the certiorari petition. Parkway Bank, 658 So.2d at 650.
PARKER, C.J., and CAMPBELL, J., concur.
NOTES
[1] "The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." Mian v. Donaldson, Lufkin & Jenrette Securities, 7 F.3d 1085, 1087 (2nd Cir.1993). "The conspiracy must be motivated by some racial or perhaps otherwise class-based invidious discriminatory animus behind the conspirators' action." 7 F.3d at 1088. Further, "a § 1986 claim must be predicated upon a valid § 1985 claim." 7 F.3d at 1088.

The officers correctly point out that Ludwig's third amended complaint lacked even conclusory allegations to support a claim that he was discriminated against for a racial or class-based reason. Nor do the undisputed facts seem to support any possibility that he could allege such discrimination.
Further, the one-year statute of limitations for a § 1986 action provides an independent basis for summary judgment.